# No. 16-55548

In The

# United States Court of Appeals

For The Ninth Circuit

►►◄◄

MOLDEX-METRIC, INC.,

*Plaintiff-Appellant,*

v.

MCKEON PRODUCTS, INC.,

*Defendant-Appellee.*

_____

*On Appeal From The United States District Court*
*For The Central District of California*
*Hon. George H. King, Chief District Judge*

## OPENING BRIEF OF PLAINTIFF-APPELLANT

Harold A. Barza
Joseph M. Paunovich
 QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000


September 26, 2016

Sanford I. Weisburst
QUINN EMANUEL URQUHART
 & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1(a), Plaintiff-Appellant Moldex-Metric, Inc. certifies that it has no parent corporation and that no public company holds ten percent or more of its stock.

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION ......................................................................................1

JURISDICTION.........................................................................................4

STATEMENT OF ISSUES ..........................................................................5

STATEMENT OF THE CASE.......................................................................5

    A.   Moldex's Green Color Mark .....................................................5

    B.   Other Available Earplug Colors ................................................7

    C.   McKeon's Use Of A Nearly Identical Green Shade To Moldex's ...........9

    D.   Moldex's Suit Against McKeon................................................11

    E.   The District Court's First Grant Of Summary Judgment To McKeon ........................................................................11

    F.   This Court's Decision Vacating The District Court's Judgment .............13

    G.   The District Court's Second Grant Of Summary Judgment To McKeon ........................................................................14

SUMMARY OF ARGUMENT ....................................................................16

STANDARD OF REVIEW .........................................................................17

ARGUMENT ..........................................................................................18

I.    THE DISTRICT COURT DEPARTED FROM THIS COURT'S MANDATE IN DECLINING TO CONSIDER WHETHER MOLDEX'S GREEN IS NOT "ESSENTIAL" BECAUSE OTHER COLORS ARE EQUALLY OR MORE VISIBLE THAN MOLDEX'S GREEN..................................................................................18

II.   MOLDEX'S GREEN IS NOT "ESSENTIAL" FOR THE ADDITIONAL REASON THAT IT PERTAINS ONLY TO VISIBILITY RATHER THAN TO THE INDISPENSABLE USE OR PURPOSE OF EARPLUGS, TO REDUCE NOISE ......................26

CONCLUSION .......................................................................................27

STATEMENT OF RELATED CASES ............................................................27

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME............................29

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

<u>Cases</u>

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
  457 F.3d 1062 (9th Cir. 2006) ............................................................21, 22, 23

*Christian Louboutin S.A. v. Yves Saint Laurent America Holding, Inc.*,
  696 F.3d 206 (2d Cir. 2012) ...........................................................................23

*Clicks Billiards v. Sixshooters, Inc.*,
  251 F.3d 1252 (9th Cir. 2001) ........................................................................17

*DAP Prods., Inc. v. Color Tile Mfg., Inc.*,
  821 F. Supp. 488 (S.D. Ohio 1993) ................................................................26

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
  158 F.3d 1002 (9th Cir. 1998) ....................................................11, 12, 13, 19

*Entrepreneur Media, Inc. v. Smith*,
  279 F.3d 1135 (9th Cir. 2002) ........................................................................14

*Fabrication Enters., Inc. v. Hygenic Corp.*,
  64 F.3d 53 (2d Cir. 1996) .........................................................................22, 25

*Keystone Consol. Indus., Inc. v. Mid-States Distrib. Co.*,
  235 F. Supp. 2d 901 (C.D. Ill. 2002) ..............................................................26

*Master Distribs., Inc. v. Pako Corp.*,
  986 F.2d 219 (8th Cir. 1993) ..........................................................................25

*Moldex-Metric, Inc. v. McKeon Prods., Inc.*,
  No. 13-55446, 596 Fed. App'x 567 (9th Cir. Mar. 6, 2015) (unpub.) ........*passim*

*Pit River Tribe v. U.S. Forest Serv.*,
  615 F.3d 1069 (9th Cir. 2010) ........................................................................17

*Qualitex Co. v. Jacobson Products Co.*,
  514 U.S. 159 (1995)................................................................................*passim*

*Surfvivor Media, Inc. v. Survivor Prods.*,
  406 F.3d 625 (9th Cir. 2005) ..........................................................................17

*Talking Rain Beverage Co. v. South Beach Beverage Co.*,
  349 F.3d 601 (9th Cir. 2003) ..........................................................................12

*Texas Tech. Univ. v. Spiegelberg*,
  461 F. Supp. 2d 510 (N.D. Tex. 2006) ...........................................................26

*TrafFix Devices, Inc. v. Marketing Displays, Inc.*,
  532 U.S. 23 (2001)...........................................................................2, 13, 14, 21

## Statutes And Rules

15 U.S.C. § 1125(a)(3)................................................................4

28 U.S.C. § 1291........................................................................4

28 U.S.C. § 1331........................................................................4

Fed. R. App. P. 4(a)(1)..............................................................4

Ninth Cir. Gen. Order 3.6(d)................................................1, 27

## Other Authorities

1 TRADE DRESS PROTECTION § 7.13 (2d ed. 2015) ................................25

This is a comeback case under Ninth Circuit General Order 3.6(d). A prior appeal was decided by a majority opinion joined by Judge Callahan and Judge Owens; Judge Watford dissented. *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, No. 13-55446, 596 Fed. App'x 567 (9th Cir. Mar. 6, 2015) (unpublished) (reproduced at Excerpts of Record ("ER") 13-17).

## **INTRODUCTION**

Plaintiff-Appellant Moldex-Metric, Inc. ("Moldex") sued Defendant-Appellee McKeon Products, Inc. ("McKeon") for infringing Moldex's trademark on a distinctive green color shade for earplugs. The district court granted summary judgment to McKeon, holding that Moldex's green is functional and thus ineligible for trademark protection. On Moldex's appeal, this Court vacated because the district court, in analyzing functionality, had "ignore[d] *Qualitex*'s focus on essentiality." ER15. This Court explained that, under *Qualitex Co. v. Jacobson Products Co.*, 514 U.S. 159 (1995), the fact that a color has "some functionality" does not end the analysis; instead, one must ask whether "other colors achiev[e] the same goal," ER14, such that the color proposed to be trademarked is not essential. Because that issue was likely factual, this Court "doubt[ed] summary judgment on functionality grounds would be appropriate in this case." ER15.

On remand, the district court again granted summary judgment to McKeon. In doing so, the court erroneously departed from this Court's mandate. The district

court heavily relied not on this Court's mandate, but on the non-color case of *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23 (2001), which McKeon had unsuccessfully cited in its brief and in oral argument on the prior appeal. As in its first summary-judgment decision, the district court declined to ask whether other colors besides Moldex's would achieve the function of making earplugs visible. Instead, the court held that a color is ineligible for trademark protection if it "contributes to the intended operation of th[e] particular product in a significant way." ER5. According to the court, because Moldex's green meets this standard by making the earplugs visible against skin, it is legally irrelevant that "other colors— such as bright yellow or bright orange—may possess the same beneficial visibility attributes [as] the Green Color Mark." ER6.

The district court's standard contravenes not only this Court's mandate, but *Qualitex*. Reprising an argument unsuccessfully advanced by McKeon on the prior appeal, the district court sought to distinguish *Qualitex* as a case where *any color* would hide stains on dry-cleaning press pads, whereas here (according to the district court) some colors are better than others in achieving the function of visibility against skin. ER7. To the contrary, *Qualitex* considered the situation where "colors are in limited supply," 514 U.S. at 168—*i.e.*, where not just any color will do—and held that "the circumstances of a particular case" must be examined to determine whether affording trademark protection to a particular color "threaten[s] 'color

depletion,'" *id.* at 170. Again, the district court declined to consider how many colors would remain available if trademark protection were afforded to Moldex's green (or 3M's yellow, which is also trademarked).

Here, the trier of fact could easily find that many available shades of green, yellow, and orange—not to mention other colors and multi-color patterns—are equally or more visible than Moldex's green or 3M's yellow:



*See* http://www.pantone.com/pages/pantone/colorfinder.aspx, last accessed Sept. 26, 2016.

Under the proper legal standard set forth in this Court's mandate, Moldex should have been afforded the opportunity to prove at trial that Moldex's green is eligible for trademark protection, and that McKeon copied Moldex's green for the impermissible reason of appropriating the strong reputation Moldex had built up among consumers over many years, using its green as an identifying symbol. This Court should vacate the district court's grant of summary judgment to McKeon and remand the case for trial.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 because this case involves claims under the Lanham Act, 15 U.S.C. § 1125(a)(3). This Court has jurisdiction under 28 U.S.C. § 1291 to review the district court's final judgment, which was entered on March 31, 2016. ER1. Moldex timely filed its notice of appeal on April 14, 2016. ER9; *see* Fed. R. App. P. 4(a)(1).[1]

---

[1] Moldex's ER is identical to the ER submitted by both parties on the first appeal, except for the deletion of the notice of appeal regarding the first appeal and the old district court docket sheet, and the addition of: (1) this Court's decision on the first appeal; (2) the oral argument transcript from the first appeal; (3) the district court's decision on remand; (4) the new notice of appeal; and (5) an updated district court docket sheet.

## STATEMENT OF ISSUES

1.    Did the district court depart from this Court's mandate by declining to consider whether Moldex's distinctive green color shade for earplugs is not "essential" because it would leave numerous other colors available to competitors?

2.    Is Moldex's green not "essential" for the additional reason that it does not affect the indispensable use or purpose of earplugs, to reduce noise?

## STATEMENT OF THE CASE

### A.    Moldex's Green Color Mark

The very first foam earplug Moldex began selling in 1982 used a distinctive shade of the color green (the "Green Color Mark").  ER1302.  Moldex has continuously sold earplug products with the Green Color Mark to identify its products and to distinguish them from those made and sold by others.  ER1305.  To date, Moldex has sold more than 1.6 billion pairs of such earplugs.  ER1131.

To create public awareness of the Green Color Mark, Moldex has expended substantial time, effort, and money promoting the Green Color Mark in conjunction with its earplugs.  Moldex uses the Green Color Mark to identify its earplug products on Moldex's website, the websites of Moldex's distributors and resellers of earplug products, catalogs, brochures, advertisements in trade journals, magazines and catalogs, and print media.  ER1302-03.

5

As a result of Moldex's efforts, Moldex's earplugs bearing the Green Color Mark have a strong reputation in the industry for being of extremely high quality. Such earplugs have been used by millions of people. ER1131. The Green Color Mark has become synonymous with Moldex and a key component of Moldex's goodwill and reputation.[2]

Moldex vigilantly polices the market to ensure that others do not capitalize on Moldex's goodwill and trademark rights. Moldex has enforced its Green Color Mark when third parties have attempted to use the same or confusingly similar green colors on earplugs. For example, Moldex has enforced its Green Color Mark against third parties such as Cabot Safety Corporation, Howard Leight, Bilsom Group, Affirmed Medical, Aearo Corporation, Tasco Corporation, Gateway Safety, Inc., Fairway Import-Export, Inc., Radians, Inc., and SwedSafe AB. These third parties agreed, in most cases without a lawsuit being filed, to cease and desist manufacturing, marketing, promoting, offering to sell, and selling earplugs bearing the Green Color Mark. ER1124-25, 1308.

---

[2]   Moldex's expert conducted a survey showing that at least 28% of prospective purchasers identifies products with the Green Color Mark as coming from a single source, and 55% of that 28% identifies Moldex as the source. ER117; *see also* ER159 (Expert Report of Howard Marylander finding secondary meaning associated with Moldex's specific green color based on confusion level). In addition, numerous distributors of earplugs identify earplugs bearing the Green Color Mark as manufactured by Moldex. ER66, 68, 70, 72, 74, 76.

Through these efforts, Moldex has enjoyed great commercial success selling its earplugs with the Green Color Mark. Moldex sold approximately $191,917,123.77 worth of such earplugs from 1982 through 2011. ER1131.

## B. Other Available Earplug Colors

Earplug manufacturers successfully market and sell earplugs in hundreds of colors. Colored earplugs (including Moldex's specific green shade), all of which contrast with skin, are often advertised in various ways as beneficial for observers to determine whether the user is wearing earplugs. *E.g.*, ER78, 81, 83, 94, 1132. Notwithstanding that color makes earplugs visible against skin, the indispensable use and purpose of earplugs is to reduce noise. ER1123 (function of earplugs is to block sound and/or reduce noise for the wearer); ER1322 (McKeon's National Sales Manager's admission that color has no effect on sound); ER994 (same).

The U.S. Patent and Trademark Office ("USPTO") has concluded on multiple occasions that a single-color or multi-color earplug can be registered as a trademark despite the fact that such color(s) make earplugs visible against skin. 3M Company, for example, holds a long-standing registration for a particular bright yellow shade:



U.S. Reg. Ser. No. 73593430 (http://tsdr.uspto.gov/#caseNumber=73593430 &caseType=SERIAL_NO&searchType=statusSearch, last accessed Sept. 26, 2016); ER229-378 (3M Yellow Trademark Prosecution File History).

The USPTO has also registered a trademark for multi-color earplugs:



U.S. Reg. Ser. No. 76347406 (http://tsdr.uspto.gov/#caseNumber=76347406 &caseType=SERIAL_NO&searchType=statusSearch, last accessed Sept. 26, 2016); *see also* http://moldex.smugmug.com/Hearing-Protection/Earplugs-Foam/4999976_xBJ6rb#!i=1250139582&k=b5p5WS8, last accessed Sept. 26, 2016.

McKeon itself successfully sells earplugs in numerous colors, several of which contrast with skin for easy detection:

8






Pillow Soft Silicone Ear Plugs    Original Soft Foam Ear Plugs    Ultra Soft Foam Ear Plugs    Slim Fit Soft Foam Ear Plugs






Dreamgirl Soft Foam Ear Plugs    Sound Asleep Soft Foam Ear Plugs    Snoozers Silicone Putty Ear Plugs    Ear Ammo Soft Foam Ear Plugs

http://www.macksearplugs.com/category/sleeping-earplugs, last accessed Sept. 26, 2016; *see also, e.g.*, ER1390-92 (McKeon's National Sales Manager testifying that McKeon had success selling earplugs in white, sea foam green, hot pink, and beige); ER1002 (undisputed that McKeon's best selling earplugs are beige and teal); ER1003 (undisputed that McKeon sells earplugs in other colors); ER496-500 (McKeon Catalog); ER514, 517-18 (McKeon Catalog); ER417-18, 429-30 (McKeon discovery responses).

### C. McKeon's Use Of A Nearly Identical Green Shade To Moldex's

Rather than choose another available color (including even another distinct shade of green), McKeon intentionally sought to confuse customers and to take advantage of Moldex's investment in the Green Color Mark by selling an earplug with a green color that is virtually identical to the Green Color Mark:

9



ER1055. Moldex learned of McKeon's infringement when McKeon approached Moldex to manufacture foam earplugs for McKeon. In the spirit of building a business relationship, Moldex offered to manufacture another non-infringing green color or any other color earplug for McKeon, so long as McKeon agreed to stop importing and selling earplugs bearing the Green Color Mark. ER652. McKeon refused. *Id.*

Given that a substantial percentage of consumers associate the Green Color Mark with Moldex, ER117, McKeon's sales of earplugs with a green color that is virtually identical to Moldex's Green Color Mark is likely to cause consumer confusion. Moldex's expert found 35% confusion between McKeon's and Moldex's earplugs among McKeon's prospective purchasers. ER159. Other evidence demonstrates that McKeon knew of the Green Color Mark and willfully and intentionally copied the mark to exploit the secondary meaning in the specific green color used with Moldex's earplugs, to take advantage of Moldex's goodwill and reputation, and to confuse consumers. For example, McKeon sought to convince

Walmart to replace Moldex's green earplugs with McKeon's green earplugs on Walmart's shelves. ER1312.

### D. Moldex's Suit Against McKeon

Moldex filed this suit against McKeon under the Lanham Act, asserting that McKeon's green earplugs infringe and dilute Moldex's trademark, and that McKeon's actions constitute unfair competition. McKeon counterclaimed for declaratory relief that its earplugs do not infringe or dilute Moldex's trademark and that its actions are lawful. Following discovery, the parties cross-moved for summary judgment, with McKeon arguing, *inter alia*, that the specific green color of Moldex's earplugs is functional and therefore not eligible for trademark protection. According to McKeon, Moldex's Green Color Mark has a function in certain situations, such as hunting or sleeping, where a person might want to see if a user has earplugs inserted. McKeon argued that the district court should ignore, as supposedly legally irrelevant, that hundreds of other equivalent or superior colors are visible against skin.

### E. The District Court's First Grant Of Summary Judgment To McKeon

The district court accepted McKeon's functionality argument and thus granted summary judgment to McKeon. ER62. In so ruling, the district court placed particular reliance on *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002 (9th Cir. 1998). ER54-58. The district court did not discuss or apply *Qualitex*.

Under *Disc Golf*, the district court ruled, it is not necessary to examine whether color is essential to the use or purpose of earplugs, *i.e.*, whether there are sufficient alternatives to Moldex's green shade that McKeon (and other competitors) could achieve the same visibility function through use of other colors, without any impact on competition. ER60. More specifically, the court found it unnecessary to consider the existence of alternatives (the fourth *Disc Golf* factor) because the first three factors, in the district court's view, supported a finding of functionality: "Plaintiff has failed to put forth evidence that, if uncontroverted, would entitle it to a directed verdict as to the first two factors, and the third factor is neutral. Thus, under *Talking Rain* [*Beverage Co. v. South Beach Beverage Co.*, 349 F.3d 601 (9th Cir. 2003)], because the first three factors support a finding of functionality, the existence of alternative designs alone is insufficient to negate functionality." ER60.

Having found it unnecessary to consider the existence of alternative colors, the district court did not give any weight to the testimony of Moldex's color expert, who explained that there are "hundreds of other colors, including hues between unique green and unique yellow that Defendant could choose from." ER60 n.7 (internal quotations omitted); *see also* ER101.[3]

---

[3] The district court did not reach McKeon's additional arguments for summary judgment, namely that (according to McKeon) there is no secondary meaning in Moldex's Green Color Mark and no likelihood of confusion from McKeon's identical green earplugs. ER62 n.9.

### F.  This Court's Decision Vacating The District Court's Judgment

Moldex appealed.  This Court, in an opinion joined by Judge Callahan and Judge Owens, vacated the district court's judgment and remanded for further proceedings.  ER15.  This Court began by describing *Qualitex* as holding "that even if a color rendered some functionality for the product, the color could still receive trademark protection," and, more specifically, that "the green-gold color on the dry cleaning press pads [at issue in *Qualitex*] could receive trademark protection despite some functionality, *as other colors achieved the same goal of hiding stains*."  ER14 (emphasis added) (citing *Qualitex*, 514 U.S. at 166).

This Court vacated the district court's judgment because the court had "rigidly applie[d] [the *Disc Golf*] factors and ignore[d] *Qualitex*'s focus on essentiality."  ER15; *see also id.* (the district court "overlook[ed] *Qualitex*"); *id.* at ER14 (the district court "relied on the non-exclusive factors described in *Disc Golf* …, understanding those factors to be dispositive").  This Court did not accept McKeon's argument, advanced in its appellate brief and during oral argument, that *TrafFix* rather than *Qualitex* is the controlling precedent.  *See* Appellees' Br. 9-10 (filed Sept. 25, 2013), Ninth Cir. Case No. 13-55446, Docket Entry No. 10-1; ER38-39 (Transcript of Oral Argument ("Tr.") 18-19 (Feb. 11, 2015)).  Nor did this Court accept McKeon's argument that *Qualitex* is distinguishable on the ground that,

according to McKeon, "[a]ny color" would have accomplished the function at issue in *Qualitex* (*i.e.*, to hide stains on dry-cleaning press pads). *See* ER38 (Tr. 18).

Expressing "doubt [that] summary judgment on functionality grounds would be appropriate in this case," this Court remanded for "the district court to assess functionality in light of *Qualitex* in the first instance." ER15; *see also id.* ("'Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena.'") (quoting *Enterpreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002)).

## G. The District Court's Second Grant Of Summary Judgment To McKeon

On remand, the district court again adhered to the view that, in a color case, "if a product feature is functional …, there is no need to inquire into alternative designs, or the competitive necessity, of the feature." ER5. As McKeon had done unsuccessfully on the prior appeal before this Court, the district court principally relied on *TrafFix*, ER5, which did not involve a color, but rather a road-sign design that had been covered by an expired patent.

The district court did not discuss this Court's interpretation of *Qualitex* as mandating an inquiry into whether "'exclusive use of the [color] would put competitors at a significant non-reputation related disadvantage,'" or, equivalently, whether "other colors achiev[e] the same goal." ER14 (citing *Qualitex*, 514 U.S. at 166). Again as McKeon had done unsuccessfully on the prior appeal before this

14

Court, the district court purported to distinguish *Qualitex* as involving a situation where "*any* color [would] suffice" to achieve the function. ER7 (emphasis added); *see also id.* ("[W]hile the press pads [in *Qualitex*] needed *some* color to satisfy this function, there was nothing about this particular green-gold color that made it better suited than *any other color* in performing this function.") (second emphasis added). The district court did not consider *Qualitex*'s recognition that its legal standard applies even where a party argues, "in the context of a particular product, [that] only some colors are usable." *Qualitex*, 514 U.S. at 168-70 (declining to adopt a "blanket prohibition" on trademark protection for colors and holding instead that "the circumstances of a particular case" must be examined to determine whether there are "anticompetitive consequences" of affording trademark protection to a specific color).

The district court, applying its legal standard rather than this Court's mandated interpretation of *Qualitex* to the summary-judgment record here, then held that Moldex's Green Color Mark is functional as a matter of law because of its "increased visibility." ER6. The district court found it legally irrelevant that "some other colors—such as bright yellow or bright orange—may possess the same beneficial visibility attributes." *Id*.[4]

---

[4] Like the district court's first decision granting summary judgment to McKeon, the district court's second decision did not reach secondary meaning or likelihood of confusion, resting only on functionality. ER8 n.3.

## **SUMMARY OF ARGUMENT**

This Court's mandate, interpreting *Qualitex*, held that, "even if a color render[s] some functionality for the product, the color could still receive trademark protection." ER14. Thus, this Court held, it is improper to stop the analysis upon finding that the color has "some functionality"; instead, one must proceed to inquire whether "other colors achiev[e] the same goal." *Id.*

The district court erroneously departed from this Court's mandate by adhering to the same incorrect approach the district court had followed in its first summary-judgment decision. The district court held that a color is not eligible for trademark protection "if the [color] contains an attribute that contributes to the intended operation of that particular product in a significant way." ER5. Finding that Moldex's green color shade meets this standard, the district court held it legally irrelevant that "other colors—such as bright yellow or bright orange—may possess the same beneficial visibility attributes [as] the Green Color Mark." ER6. Again, this Court's mandate held, to the contrary, that a color can be eligible for trademark protection even if it "render[s] some functionality," and that the key (and required) test is whether "other colors achiev[e] the same goal." ER14.

Given the district court's erroneous legal standard, the court did not specifically decide whether the summary-judgment record would allow the trier of fact to find—under the correct legal standard—that "other colors achiev[e] the same

16

goal." The summary-judgment record would support (indeed, arguably compel) a finding that multiple other colors achieve the same goal. Specifically, Moldex adduced evidence that numerous color shades and multi-colored patterns are equally or more visible than Moldex's specific green shade. Any of those shades is available to competitors, and therefore affording trademark protection to Moldex's green would not have an adverse impact on competition. To the extent McKeon disputes that evidence, the dispute should be resolved at trial, not on summary judgment.

The foregoing analysis suffices for this Court to vacate the district court's summary judgment. But an additional, independent ground to vacate, if the Court is inclined to proceed further, is that earplug color does not impact the indispensable use or purpose of earplugs, to reduce noise.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant of summary judgment. *See* ER13 (citing *Surfvivor Media, Inc. v. Survivor Prods.,* 406 F.3d 625, 630 (9th Cir. 2005)). This Court views the evidence in the light most favorable to the nonmoving party (here, Moldex) and draws all reasonable inferences in that party's favor. *See, e.g.*, *Clicks Billiards v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). This Court likewise reviews *de novo* whether the district court complied with a prior mandate of this Court. *See, e.g.*, *Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1080 (9th Cir. 2010).

17

**ARGUMENT**

## I. THE DISTRICT COURT DEPARTED FROM THIS COURT'S MANDATE IN DECLINING TO CONSIDER WHETHER MOLDEX'S GREEN IS NOT "ESSENTIAL" BECAUSE OTHER COLORS ARE EQUALLY OR MORE VISIBLE THAN MOLDEX'S GREEN

This Court's mandate explained the content of *Qualitex*'s essentiality test in a color case. That test contemplates "that even if a color rendered some functionality for the product, the color could still receive trademark protection." ER14 (citing *Qualitex*, 514 U.S. at 166). The test's "key inquiry … is whether the color 'is essential to the use or purpose of the article or if it affects the cost or quality of the article, *that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage*.'" *Id.* (quoting *Qualitex*, 514 U.S. at 165) (internal quotation marks omitted in original; emphasis added)). In other words, where there is no "significant non-reputation-related disadvantage" to competitors from "exclusive use of the [color]," there is no "essentiality" that would bar trademark protection of a color on functionality grounds. This Court observed that *Qualitex*, in applying this test, "held that the green-gold color on the dry cleaning press pads could receive trademark protection despite some functionality, as other colors achieved the same goal of hiding stains." *Id.* (citing *Qualitex*, 514 U.S. at 166).

This Court vacated the district court's grant of summary judgment to McKeon because the district court had "not address[ed] essentiality when analyzing the

functionality of the ear plugs' green color." *Id.*; *see also id.* (district court erroneously "relied on the non-exclusive factors described in *Disc Golf* . . . , understanding those factors to be dispositive") (internal citation omitted); ER15 (district court "rigidly appl[ied] [the *Disc Golf*] factors and ignore[d] *Qualitex*'s focus on essentiality").[5]  This Court remanded for "the district court to assess functionality in light of *Qualitex* in the first instance."  ER15.

The district court failed to comply with this Court's mandate.  Just as in its first decision granting summary judgment to McKeon, the district court held in its second decision that the inquiry is at an end—and the color is not eligible for trademark protection—"if the [color] contains an attribute that contributes to the intended operation of that particular product in a significant way."  ER5.  Thus, the district court held it legally irrelevant "[t]hat some other colors—such as bright yellow or bright orange—may possess the same beneficial visibility attributes [as] the Green Color Mark."  ER6.  But, as summarized above, this Court's mandate required an essentiality inquiry under *Qualitex* into whether sufficient other colors exist that competition would not be hindered by affording trademark protection to Moldex's green—in other words, an inquiry into whether "other colors achiev[e] the same goal."  ER14.

---

[5]  *Disc Golf* did not involve a color, but rather the design of a device used in the game of frisbee golf.  158 F.3d at 1005-10.

Even if the district court were free to rely on precedents besides this Court's mandate to adopt a different test of functionality here, the district court misconstrued those precedents. Consider first *Qualitex*, which is the most on-point Supreme Court decision because, like this case, it involved a color. The district court, adopting an interpretation of *Qualitex* that McKeon had unsuccessfully urged on this Court in the prior appeal, ER38 (Tr. 18), purported to distinguish *Qualitex* as a case where "*any* color will suffice" to achieve the function at issue (*i.e.*, hiding stains on dry-cleaning press pads), ER7 (emphasis added), whereas here, according to the district court, only certain colors achieve the function of visibility and "[n]ot any color will suffice," *id*. But the district court failed to appreciate that *Qualitex* addressed the very scenario here where some colors are arguably better than others at achieving the function. The *Qualitex* petitioner had argued that, "in the context of a particular product, only some colors are usable." 514 U.S. at 168. The Supreme Court rejected that argument as "unpersuasive … largely because it relies on an occasional problem to justify a blanket prohibition. When a color serves as a mark, normally alternative colors will be available for similar use by others." *Id.* Instead of adopting the *Qualitex* petitioner's proposal of a "blanket prohibition" on affording trademark protection to a color that achieves a function, the Supreme Court held that "*the circumstances of a particular case*" must be considered to determine whether affording trademark protection would "threaten 'color depletion.'" *Id.* at 170

20

(emphasis added). But the district court declined to consider such circumstances here and instead resolved an issue that should have been left to the trier of fact to decide based on the evidence at trial.

In addition to misinterpreting *Qualitex*, the district court relied heavily on *TrafFix* to support the district court's notion that the availability of other colors need not be considered where the color as to which trademark protection is sought achieves some function. *See* ER5-7. In doing so, the district court again adopted an argument that McKeon had unsuccessfully advanced to this Court on the prior appeal,[6] before this Court issued its mandate relying on *Qualitex* rather than *TrafFix*. This Court's mandate was correct: *Qualitex* is the governing precedent because it involved a color trademark, while *TrafFix* involved a proposed trademark of a *structural design* (of a traffic sign) that had been covered by a functional utility patent. *See TrafFix*, 532 U.S. at 29-32.

The district court likewise misinterpreted *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062 (9th Cir. 2006), to support the district court's holding that, once a color is shown to achieve some function, there is no need to inquire further into the availability of other colors that achieve the same function. ER6 n.1. As an initial matter, this Court's mandate did not view *Au-Tomotive Gold*

---

[6] *See* ER39-40 (Tr. 19-20) (McKeon's counsel at oral argument: "TrafFix is really the controlling law here. . . . [I]f you don't want to be reversed, you follow the Supreme Court's last statement on it which was TrafFix which also cited Qualitex.").

as requiring a departure from the *Qualitex* approach in a color case, even though McKeon had so argued on the prior appeal. *See, e.g.*, Appellees' Br. 9-10 (filed Sept. 25, 2013), Ninth Cir. Case No. 13-55446, Docket Entry No. 10-1. Again, this Court's mandate was correct. *Au-Tomotive Gold*, which did not involve a color trademark but rather a trademark on company names and logos, 457 F.3d at 1065, itself acknowledged *Qualitex*'s holding in the color context that, even though "coloring dry cleaning pads served [a] nontrademark purpose by avoiding visible stains," *id.* at 1073, the green-gold color was eligible for trademark protection because "'other colors are equally usable,'" *id.* at 1070 (quoting *Qualitex*, 514 U.S. at 166).

This Court's mandate is hardly an outlier. The Second Circuit took the same approach in a case involving a proposed trademark on colored exercise bands. *See Fabrication Enters., Inc. v. Hygenic Corp.*, 64 F.3d 53 (2d Cir. 1996). The district court there, like the district court here, "began and ended its analysis with determining whether the feature is important to the usefulness of the item." *Id.* at 59. Relying on *Qualitex*, the Second Circuit reversed, holding that "a finding that a color serves a useful non-source-identifying function … is in fact only the starting point for analysis of whether protecting the color as an aspect of trade dress would restrain competition unduly." *Id.* at 58. The court must proceed to "assess how the

22

extension of [trademark] protection to useful [colors] may [a]ffect competition." *Id.* at 59.[7]

*     *     *     *     *

There remains the question whether the factfinder could find on this summary-judgment record that a sufficient number of "other colors achiev[e] the same goal" of making earplugs visible to observers, ER14, such that affording protection to Moldex's green will not harm competition.

The summary-judgment record would support (indeed, arguably require) such a finding. There are hundreds, if not thousands, of alternative colors besides Moldex's green, including other distinct shades of green and multi-color patterns. ER101. The USPTO agrees, having granted trademark registrations for particular yellow and multi-color earplugs. *See supra*, at 7-8. Many of these alternative colors, including blue, purple, and pink, are already successfully sold by McKeon and other earplug manufacturers. *See supra*, at 8-9.

Indeed, McKeon conceded below that there are many green shades and other color shades that would serve the function of being easily visible by an observer. *See* ER1388-90 (McKeon's National Sales Manager's testimony that it is possible

---

[7] The Second Circuit's subsequent decision in *Christian Louboutin S.A. v. Yves Saint Laurent America Holding, Inc.*, 696 F.3d 206 (2d Cir. 2012) (cited at ER5), does not overrule *Fabrication Enterprises*; to the contrary, it approvingly cites that decision. *See, e.g.*, 696 F.3d at 215, 219, 222.

there were other shades of green that could be as effective as McKeon's accused green color); *supra*, at 3 (depicting Pantone color shades in green, yellow, and orange that are available to competitors). McKeon's own expert testified that numerous available shades of green and yellow (*i.e.*, shades other than Moldex's green and 3M's yellow) are potentially *superior* to Moldex's green shade in terms of visibility:

> Q: … Moldex's range, let's assume in this hypothetical, falls completely outside of those available ANSI [American National Standards Institute] standard colors. You would agree with me in that instance that Moldex – the colors Moldex claims as its trademark would not provide a functional advantage?
>
> A: If someone were free to use the colors inside the ANSI range, then the colors that Moldex is trying to trademark – at least the ones that I saw in the Pantone sheet, that's all I know about, I don't know the full range, but assuming those are the colors and they are outside -- and they are outside the ANSI standard, then the answer would be yes.

ER598-599 (Green Dep. 157:12-158:6). And Moldex's expert provided testimony supporting the premise of this hypothetical, *i.e.*, that the Moldex green color shade lies outside the ANSI range. *See* ER100-101, 104-105, 107; ER553-54 (McKeon's expert's statement that he does not dispute Moldex's expert's colorimetric analysis); ER101 (Moldex's expert's statement that "[t]here are hundreds of other colors,

including hues between unique green and unique yellow, which viewers could visually distinguish from Moldex's green color mark").[8]

In short, here, as in other cases, genuine issues of fact exist on the availability of alternative colors that achieve the same function, such that summary judgment cannot be granted in favor of McKeon. *See, e.g.*, *Master Distribs., Inc. v. Pako Corp.*, 986 F.2d 219, 225 (8th Cir. 1993) ("It is highly improbable that every distinguishable color shade has already been selected and would be subject to trademark protection. … [G]ranting summary judgment at this early stage with regard to such a factual issue is improper."); *Fabrication Enters.*, 64 F.3d at 61 ("[T]here are genuine issues of fact here. … In consequence, we cannot sustain the judgment in light of *Qualitex*, even if Fabrication's affidavits and declarations are considered."); *see generally* 1 TRADE DRESS PROTECTION § 7.13 (2d ed. 2015) ("The lower courts will need to decide shade confusion issues as they arise in the future. Expert testimony, and the PMS [Pantone Matching System] standards, should be utilized when appropriate.").

---

[8]   Moldex also adduced evidence that its particular shade of green is not less expensive to manufacture than other shades and colors that achieve the function of making the earplug visible to observers. *See, e.g.*, ER1123-24, 1365, 1374.

## II. MOLDEX'S GREEN IS NOT "ESSENTIAL" FOR THE ADDITIONAL REASON THAT IT PERTAINS ONLY TO VISIBILITY RATHER THAN TO THE INDISPENSABLE USE OR PURPOSE OF EARPLUGS, TO REDUCE NOISE

To vacate the district court's judgment, this Court need go no further than the argument set forth in Point I above, *i.e.*, that the district court departed from this Court's mandate in failing to consider whether Moldex's green is not essential because alternative colors are available, and that the summary-judgment record would support (indeed, arguably require) a finding that sufficient alternative colors are indeed available.

But even aside from Point I, Moldex's green is not essential for the additional and independent reason that it concerns only the visibility of earplugs against skin; Moldex's green does not impact the indispensable use or purpose of earplugs, to reduce noise. Several courts have relied on such analysis in finding a color eligible for trademark protection. *See Keystone Consol. Indus., Inc. v. Mid-States Distrib. Co.*, 235 F. Supp. 2d 901, 906 n.2 (C.D. Ill. 2002) (red top wire not functional because the "benefit of the color placement feature is one that is incidental to the mark" and "the addition of color does nothing to enhance the efficacy of … fencing"); *Texas Tech. Univ. v. Spiegelberg*, 461 F. Supp. 2d 510, 520 (N.D. Tex. 2006) ("no evidence … color scheme [is] the reason the products work"); *DAP Prods., Inc. v. Color Tile Mfg., Inc.*, 821 F. Supp. 488, 493 (S.D. Ohio 1993) ("red bucket is clearly not a functional feature [because] [it] is not essential to the use or

purpose of [the product in the bucket]"); *see also* ER35-36 (Tr. 15-16) (Judge Owens: "I mean when I think something is essential, that doesn't mean just some [function]. That means it's essential. … I have a yellow earplug and I have an orange earplug, which I've had for years. And how are these two colors – how is this yellow essential to the functioning of this earplug?"). And here, the summary-judgment record would support a finding that earplug color is not critical or even relevant to earplugs' indispensable use and purpose, which is to reduce noise. *See* ER1123 (function of earplugs is to block sound and/or reduce noise for the wearer); ER1322 (McKeon's National Sales Manager's admission that color has no effect on sound); ER994 (same).

## CONCLUSION

The judgment should be vacated and the case remanded for trial.

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6(b), Moldex states that this appeal is related to an appeal previously heard and decided by a panel of this Court consisting of Judge Callahan, Judge Watford, and Judge Owens. *See Moldex-Metric, Inc. v. McKeon Products, Inc.*, No. 13-55446, 596 Fed. App'x 567 (9th Cir. Mar. 6, 2015). Accordingly, this is a comeback case under Ninth Circuit General Order 3.6(d).

Dated: September 26, 2016      Respectfully submitted,

By: /s/ Sanford I. Weisburst
    Sanford I. Weisburst

27

QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

Harold A. Barza
Joseph M. Paunovich
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
(213) 443-3000

*Attorneys for Plaintiff-Appellant*

## **CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME**

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the undersigned certifies that the attached opening brief is proportionately spaced, has a typeface of 14 points or more and contains 5,674 words.

/s/ Sanford I. Weisburst                         September 26, 2016
*Attorney for Plaintiff-Appellant*              Date

| 9th Circuit Case Number(s) | 16-55548 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  9/26/2016 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)  /s/ Sanford I. Weisburst

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)